Leo DeMoulin v. Frank Roetheli, Defendant, Kroger Grocery & Baking Company, a Corporation, Appellant.—No. 39390.—189 S. W. (2d) 562.

Division Two, September 4, 1945.

Motion for Rehearing or to Transfer to Banc Overruled, October 1, 1945.

426

*Wayne Ely* for appellant.

428

*Everett Hullverson* for respondent; *Orville Richardson* of counsel.

430

.BOHLING, C.—Leo DeMoulin recovered a judgment against the Kroger Grocery & Baking Company, a corporation, for $16,750 on account of personal injuries suffered when he fell in one of the Kroger stores. The Kroger Company has appealed. We think the judgment should stand, except for a remittitur.

Plaintiff was employed by the American Packing Company. His duties embraced the delivery of meat to retail stores. He had been making deliveries to the Kroger Grocery & Baking Company's store at 422 North Sarah street, St. Louis, Missouri, for two years. Deliveries there were made to a hanging scale for the Kroger butcher to weigh the meat. Entering the rear door he would pass through a long narrow room, ▮▮▮▮ about six feet in width and twenty-five feet in length, used for storage space and a passageway, to reach the

scale. Grease brought to the store in tin cans or glass jars by house-wives was kept in a wooden box near the scale. Between 8:30 and 9:00 A. M. on September. 16, 1943, and after the grocery but before the butcher shop had been opened for the day, plaintiff was carrying the hind-quarter of a beef, weighing approximately 130 pounds, on his shoulder along the passageway for delivery to the scale and as he neared the scale he slipped on some grease on the floor and fell. The hind-quarter of the beef landed on his stomach. The grease extended over a space approximately two feet wide by three feet long and plain-tiff had grease "all over" his pants and on the sides of his shoes. He noticed where the grease had come from, i. e., the box holding the containers, and he said it looked like one of the containers had tipped over. Additional facts will be brought out in the discussion of specific issues.

The Kroger Company contends the judgment must be reversed. Frank Roetheli was in charge of the store as general manager for the Kroger Company. Plaintiff joined the Kroger Company and Roetheli as defendants. The verdict of the jury exonerated Roetheli while finding the Kroger Company guilty of negligence; and the Kroger Company contends that under the authorities (stressing Mc-Ginnis v. Chicago, R. I. & P. Ry. Co., 200 Mo. 347, 358, 98 S. W. 590, 592, 9 L. R. A. (N. S.) 880, 9 Ann. Cas. 656, 118 Am. St. Rep. 661*) the verdict against it is inconsistent and may not stand. Coun-sel states plaintiff proceeded upon the theory that Roetheli was in charge for the Kroger Company; that the "defendants"—the Kroger Company and Roetheli—were guilty of concurrent negligence; that, on the record made, Roetheli was the only Kroger Company employee who had any opportunity to remedy the condition of the floor; that the Kroger Company, if liable at all, must be liable because of Roetheli's action or inaction, and that, if Roetheli were not negligent, the Kroger Company could not be negligent on the record made.

We think this contention stands refuted in Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 631 [1-3], 162 S. W. 2d 813, 816 [1-13]. Mrs. Devine was injured by a fall at a Kroger store. The opinion in that case discusses the authorities relied upon here. It is unnecessary to repeat what was there said. Sufficient unto the instant purposes that opinion recognizes the application of the doctrine contended for by the Kroger Company where liability of the employer falls within the rule of respondeat superior; but holds it is not applicable where the legal duties of the owner on the one hand and its manager on the

*Other authorities cited are: Stith v. J. J. Newberry Co. (Banc), 336 Mo. 467, 488 [12], 79 S. W. 2d 447, 457 [24]; Ruehling v. Pickwick-Greyhound Lines, 337 Mo. 196, 200 [2], 85 S. W. 2d 602, 603 [2]; Stoutimore v. Atchison, T. & S. F. Ry. Co., 338 Mo. 463, 468 [1], 92 S. W. 2d 658, 659 [1]; Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 529 [5, 12], 66 S. W. 2d 903, 907 [12, 25].

other differ, liability of the master or employer in such instances arising irrespective of the doctrine of respondeat superior. The opinion sets out the duties of the possessor of land to business invitees; states that Kroger's liability comes within substantive rules of tort law and does not rest upon the substantive law of agency; that owners and occupants of land cannot delegate their duty to keep the premises in a reasonably safe condition so as to avoid personal liability; and that, irrespective of the manager's exoneration, the Kroger Company "owed a duty to the respondent to maintain the store in such a manner as not to injure her by reason of a hole in the entrance of which it knew or should have known and which was unknown to her. It is not the type of tort which may be sustained solely upon a finding of negligence on the part of its manager or some other agent." (1. c. 633[2] and 818[8-12] respectively).

The Kroger Company points to two factual differences to distinguish the cases on the instant issue; i. e.: That in the Devine case a floor construction defect, which had existed for five years, was involved, and that a clerk testified his duties embraced looking after the safety of the floor and preventing customers being injured. The evidence in the instant case was that any Kroger employee who saw grease on the floor was supposed to clean it up; and, as developed in greater detail infra in ruling the issue of a case made, the jury might properly infer that some Kroger subordinate employee was the cause of the grease being on the floor, the accident occurring in the storage room and passageway and the evidence establishing it a duty of any Kroger employee to take charge of the cans of grease and place them there for the man who picked them up twice a week, or that some subordinate Kroger employee failed to properly clean the store the night before. In the circumstances the Kroger Company's liability was not necessarily limited to the action or nonaction of Roetheli. Error is not disclosed and the point is ruled for the plaintiff.

 The Kroger Company claims the demurrer to the evidence should have been sustained; because: 1. The record does not disclose that Kroger Company had timely notice, actual or constructive, of the presence of the grease. 2. Plaintiff was guilty of contributory negligence.

There may be a number of factual situations warranting a finding of due notice. The grease was kept by the Kroger Company in containers in a box near the scales in a room used for storage purposes and a passageway. Roetheli testified that the grease came from the box; that he removed the box, which was "all greasy"; and that there were several, he did not know how many, cans of grease in the box at the time. Plaintiff said the grease had flowed over an area of approximately two by three feet on the floor. Roetheli closed the store

the day before and opened it about 8:05 on the morning plaintiff was injured and passed over the spot to hang up his coat. His testimony warranted an inference that only Kroger Company employees handled the grease in this storage space, with the exception of the "bone man" who called for it twice a week. This was not space open to the trading public. There was evidence that grease of this nature would not flow like water, but flowed much slower. In these circumstances the jury might infer that some Kroger Company employee carelessly caused the grease to be on the floor and knew or was charged with knowledge that it was on the floor for a sufficient length of time to avoid plaintiff's injury. They did not have to believe Roetheli's testimony that he did not see any grease until after the injury, or, if he did not see it, believe grease was not on the floor. Consult Wood v. Walgreen Drug Stores, Inc. (Mo. App.), 125 S. W. 2d 534, 536[5, 6], citing cases; Moone v. Kroger Grocery & Baking Co. (Mo. App.), 148 S. W. 2d 628, 631[4].

Roetheli was in the front of the building when plaintiff fell and went to his assistance immediately. Plaintiff testified Roetheli assisted him to his feet and at that time said something to the effect the grease should have been cleaned up the day before and something about being neglectful; that it had been forgotten about. Plaintiff could not give Roetheli's words and testified Roetheli did not exactly say that to him. The Kroger Company claims that as to it this was hearsay testimony, insufficient to make a case against it. We are not concerned with the right of plaintiff to adduce in evidence these statements attributed to Roetheli as against either Roetheli or the Kroger Company. This testimony was admitted without objection or motion to strike or request that the jury be instructed not to consider it or to restrict their consideration of it in any manner on any ground whatsoever. In these circumstances its natural probative effect was for the consideration of the jury as " 'a rule of evidence not invoked is waived.' " Munton v. A. Driemeier S. & M. Co., 223 Mo. App. 1124, 1131, 22 S. W. 2d 61, 63[3]; Steeley v. Kurn, 348 Mo. 1142, 1144[3], 157 S. W. 2d 212, 213[4]; Roberts v. Schaper Stores Co., 318 Mo. 1190, 1197, 3 S. W. 2d 241, 244[8].; Madison v. Taxi Owners Ass'n (Mo. App.), 148 S. W. 2d 106, 108[5, 6]. Inferences from these statements that the grease was on the floor the day before and was not removed because of forgetfulness or negligence were proper.

That plaintiff did not give Roetheli's exact words did not destroy the effect of the testimony. Ray v. Hooper (Mo. App.), 204 S. W. 30, 31[6]. Roetheli may have given the impression that he was not necessarily speaking directly to plaintiff but was voicing his spontaneous reaction to the existing conditions. Plaintiff's narrative of Roetheli's statements was not contradictory or self-destructive.

The contention that plaintiff was guilty of contributory negligence as a matter of law because he testified one might find most any-

thing on the floor and that it was so dark he could not see the floor very well or small objects on the floor is without merit. Plaintiff had been delivering meat to this store for two years. It was not established that the apparent situation differed on the morning of his injury from that regularly encountered. Roetheli proceeded over the space a few minutes before under like conditions. He testified he thought it was light enough for plaintiff to proceed as he was proceeding. Any issue of contributory negligence was for the jury.

 Plaintiff submitted two factual verdict directing instructions. Instruction 1 authorized a verdict against Roetheli and the Kroger Company. Instruction 2 authorized a verdict against the Kroger Company only. The Kroger Company complains of the identity of the facts submitted and the language of these instructions, stating this repetition of the facts gave undue prominence to the facts against it and that the two instructions were inconsistent. So far as this issue is concerned the two instructions may be considered to submit identical fact situations in almost identical language with this exception, viz.: After requiring a finding that the Kroger Company was operating the store in question, instruction 1 required "and that defendant Roetheli was its manager in the store," whereas the finding required by instruction 2 was that the Kroger Company was "operating a retail grocery store by and through its agents and servants." Other than to cause the remainder of the instruction to harmonize with the above indicated differences in the introductory paragraph the respective instructions predicated a plaintiff's verdict upon findings of like facts; instruction 1 proceeding on the theory Roetheli and the Kroger Company knew or should have known of the condition in due time to have saved plaintiff et cetera and failed to do so, whereas instruction 2 proceeded on the theory the fault was attributable to the Kroger Company through the act or failure to act of some of its agents and servants. Under the authority of Devine v. Kroger Grocery & Baking Company, supra, the instructions are not subject to the attacks lodged against them. We have hereinbefore pointed out that the Kroger Company's liability was not dependent solely upon Roetheli being liable. Plaintiff had the right to submit Roetheli's liability, also Kroger Company's liability for the negligence of Roetheli, and also Kroger Company's liability for the negligence of some other Kroger Company employee. Such submissions are not inconsistent. No contention is made that the facts submitted were not constitutive elements of plaintiff's cause of action. Plaintiffs should not be precluded from submitting causes of action because of the identity of certain involved facts. In the circumstances before us the repetition of these constitutive facts of plaintiff's case against the respective defendants did not give undue prominence to the facts involved. True, the submission might take different form. It might be better prac-

tice to cover the factual matters in one instruction but it was not error for the trial court to permit the instant submission. The cases cited by the Kroger Company (State ex rel. v. Shain, 340 Mo. 434, 440, 101 S. W. 2d 1, 4[7]; Freeman v. Berberich, 332 Mo. 831, 837 [4], 60 S. W. 2d 393, 395[4]; Hencke v. St. Louis & H. Rd. Co., 335 Mo. 393, 398[3], 72 S. W. 2d 798, 800[5], and Rice v. Jefferson City B. & Tr. Co. (Mo.), 216 S. W. 746, 751[1] being illustrative) are readily differentiated on the facts.

An instruction informed the jury that where an employee is injured under circumstances entitling him to the benefit of the Workmen's Compensation act and he receives payments under that act on behalf of his employer for wages or for medical attention, he is required to refund the same in the event he recovers a money judgment from a third party liable for his injuries. It is asserted the instruction was an abstract declaration of law and had no place in the case; not that the law is misstated. We are inclined to believe this is correct. However, the Kroger Company does not reply to plaintiff's answer that the instruction, if not proper, was not reversible error under the facts of record. The statutory liability of an employer under the Workmen's Compensation act is different from the liability sought to be imposed on defendants. The facts involved within the instruction had no relation to the merits of plaintiff's cause of action. They were not relevant to the issues before the jury. But, in this case the jury were told by plaintiff's counsel in his opening statement that plaintiff's employer after the accident furnished him with all the necessary medical care and attention and paid plaintiff $20 weekly "and of course, any verdict which you award him [plaintiff], he has to pay back. That is the law. He has to pay that back to the Company. So, you understand that circumstance." Plaintiff, on the witness stand, confirmed his counsel's statement, testifying he understood he would have to refund his employer's outlays in his behalf in the event he secured a verdict. All this, and possibly more, was adduced before the jury without objection or motion to strike. The instructions in Gillioz v. State Highway Comm., 348 Mo. 211, 225[7], 153 S. W. 2d 18, 26[11], and King v. Rieth, 341 Mo. 467, 475[3], 108 S. W. 2d 1, 6[8, 10], were verdict directing instructions. The instant instruction did not direct a verdict. It could have application only in the event the jury found the facts for the plaintiff. It was of a cautionary nature. It did not authorize any increase in the amount of damages. The measure of damages instruction did not authorize an increase in the damages on account of these payments. " 'The giving of an abstract instruction will not constitute reversible error unless it appears that the complaining party has been prejudiced, or that the jury could have been misled thereby.' " Cason v. Kansas City Term. Ry. Co. (Mo.), 123 S. W.

2d 133, 139[9]. The trial court considered the instruction not prejudicial. We think reversible error is not shown and so hold.

■ Error is alleged in refusing an instruction predicating a defendants' verdict upon a finding that the room was so dark, or poorly lighted, that plaintiff could not see the floor clearly and was guilty of contributory negligence in failing to turn on the electric lights in the room. We think given instruction 7 was broader than the refused instruction and that the factual issues involved in the refused instruction were within those submitted in the given instruction. Instruction 7 told the jury that it was the duty of plaintiff to exercise ordinary care for his own safety; that if the room were dimly lighted and so dark that plaintiff could not see the floor clearly when he entered and a reasonably prudent person would not have proceeded across the floor, and that plaintiff did so proceed, plaintiff was negligent. This instruction permitted of the presentation of the fact that the lights were available to correct the situation. However, the jury, by their verdict, necessarily found it was not negligence to proceed across the floor as plaintiff proceeded, i. e., without turning on the lights. Therefore, in this situation, any failure to turn on the lights must have been insufficient to change the result.

■ The measure of damages instruction authorized an allowance for the loss of wages and earnings in an amount not to exceed $65 a week. The evidence established that plaintiff's weekly wage from his employer had been $45 and that he earned an additional $20 to $25 a week through other work. He testified he had been receiving $20 a week from his employer since the accident. It is alleged: "The record does not show what the $20 a week is for"; and, hence, his loss is $45. The position taken ignores the context of plaintiff's testimony: that is, that after the accident his employer had been making outlays on account of his wages and for medical bills which he would have to return in the event he received a judgment; that the outlay on account of his wages had been at the rate of $20 a week but he did not know what had been paid out for medical bills. There is no indication of record that defendants were entitled to credit the $20 mentioned on their liability against plaintiff's loss of the $45 and $20 weekly. That strangers are not entitled to credit on their liability in tort to an employee of another the payments made by such employer under the Workmen's Compensation act, see Brouk v. United Wood Heel Co. (Mo. App.), 145 S. W. 2d 475, 481[9].

■ It is claimed that the $16,750 verdict is excessive.

Plaintiff at the time of the accident was 40 years of age, married, in good health, and weighed about 200 pounds. He had been working fourteen years for his employer, handling heavy sides of meat. His annual earnings exceeded $3,000. The accident caused a sharp pain to shoot through his back and made his body numb. He tried to con-

tinue work but was unable on account of suffering and illness. Another driver relieved him. He was taken to the Missouri Baptist hospital where the American Packing Company's doctor treated him. He was in the hospital about two weeks. He was treated with diathermy, infra red bakes, rest in bed and sedatives. He was released to stroll around in an effort to regain strength. He lost the use of his left leg and returned to the hospital in October for ten days. He used a steel brace and crutches and the former treatment was repeated. He regained partial use of his leg in the early part of March, 1944. At times he would pass blood with his urine and bowels. After he regained partial use of his left leg he seemed to suffer more pain. He was admitted to the hospital a third time for a check-up, having developed certain gastro-intestinal ▮▮▮ symptoms. Also he suffers from shortness of breath. The trial occurred six months after he received his injuries. There was no question that he was then suffering pain and was totally disabled. He would need future treatment. His condition was due to damage to his spine in the lumbosacral region and damage to nerve structures of the back. He had an unconscious drag of his left leg. The injuries were of a nature that would not show up in x-rays but were nonetheless genuine. Dr. Harry L. Thieme, an orthopedic surgeon and who treated plaintiff for the American Packing Company, stated plaintiff was going to have permanent trouble with his back; pain, loss of motion, impaired function of the back; that he might be required to wear a brace permanently; certainly for a considerable period of time; that he could not return to his former duties, but might be able to do some light work. Dr. Robert Nussbaum described plaintiff's condition in part as comparable to shell shock and stated it was questionable how much functional capacity could be regained and he might recover or he might never be able to take care of a job again. Dr. F. G. Pernoud, after describing his findings stated ''. . . there will be some permanency of all of the conditions I described but the degree of the conditions may be variable.''

State ex rel. Kansas City Pub. Serv. Co. v. Shain, 350 Mo. 316, 322[2], 165 S. W. 2d 428, 430[2], the authority cited, is to the effect that the permanency of the injury must be removed from conjecture or probability and established with reasonable certainty to sustain damages for a permanent injury. The jury could find that plaintiff's injuries were of a permanent nature from the testimony above narrated. This testimony also disposes of the contention that the portion of the instruction on damages permitting an award for permanent injuries rested upon speculation. Under the authority of Brady v. Terminal Rd. Ass'n, 344 Mo. 502, 127 S. W. 2d 1, and cases there cited, we are not disposed to interfere.

However, it is claimed that a paragraph of the instruction on the measure of damages assumed instead of requiring the jury to find that plaintiff was entitled to $620 on account of medical and hospital attention. The instruction lends 'itself to this construction in that it told the jury to award plaintiff such sum as it believed would compensate him ''for such medical and hospital attention in the amount of $620 plaintiff has received by reason of and on account of his injuries . . . '' This may be cured by a remittitur of $620. Leingang v. Geller, Ward & Hasner Hdwe. Co., 335 Mo. 549, 561, 73 S. W. 2d·256, 262[9].

Accordingly, the judgment is affirmed upon condition that plaintiff, within ten days, remit said sum of $620 as of the date of the judgment in the circuit court; otherwise the judgment will be reversed and the cause remanded. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.