**Peggy HARRIS (now Marlett), Plaintiff-Appellant,**

v.

**Vincent O. HARRIS, Defendant-Respondent.**

No. 32912.

St. Louis Court of Appeals.

Missouri.

April 16, 1968.

John B. Busch, Clayton, for appellant.

John P. Sullivan, Clayton, for respondent.

CLEMENS, Commissioner.

Plaintiff-mother Peggy Harris, now Marlett, appeals from an order granting the motion of defendant-father Vincent O. Harris to modify the original decree of divorce as to child custody. In the original uncontested divorce suit, in 1963, the court granted her a divorce and general custody of the parties' two daughters, now nine and seven years old. By the present modification order the trial court transferred the girls' general custody to their father, subject to temporary custody with the mother on alternate weekends and holidays.

We are aware of the awesome responsibility cast upon a trial judge who must decide issues of child custody. At the trial his judicial discernment is challenged; he becomes steeped in the atmosphere of the controversy; his ability to as-

sess the character of the witnesses and to weigh their testimony exceeds ours. Because of this, Civil Rule 73.01(d), V.A.M. R., wisely directs that although we make our own findings of fact we must bear in mind the trial court's better position to judge the witnesses' credibility, and we may disturb the trial court's judgment only when it is clearly erroneous. So considering the evidence, we find it supports the change of custody to the father.

The father has regularly paid the prescribed $30-a-week child support allowance. He has made full use of his temporary custody privileges, having the girls with him the allotted three weekends each month. Four years ago the father married a young woman who is a trained nurse. He and his wife own a modern home in a rural-suburban area, with a separate bedroom for the girls. The house is near a school and a church, where the girls receive religious training on weekends.

The father's present marriage is a stable, happy one. The girls are fond of his wife, who loves them and wants them in her home. She will give up her part-time employment if the girls are placed in her husband's custody. By contrast, the girls' own mother remarried a man who sired a child and then disappeared. She and her three children live in a one-bedroom house. Since the divorce the mother has moved seven times and the girls have changed schools six times.

The mother's physical care of the girls falls short of minimum standards. Her home was unsanitary and usually in disarray. When visiting their father the girls arrived in soiled clothes and had a haggard look about them; their bodies were dirty from prolonged, hygienic neglect; their teeth were in need of dental care. We omit the squalid details. The girls are happy with their father and his wife, and reluctant to return to their mother. On these weekend visits the father and his wife give the girls remedial, hygienic care for their bodies, their clothing and their diet. Perhaps more important, they give them affection, moral and spiritual training, and wholesome recreation and family life.

At the hearing the mother minimized the shortcomings of her home, her housekeeping, and her child care. She testified to the girls' satisfactory school attendance but gave no evidence of religious and moral training or social and recreational activity. Lack of time was not the reason, for she did not work outside her home. Poverty was her excuse, even though she had a $244 monthly income. We think her explanation is inadequate for the degree of deprivation suffered by the girls. The poverty we have here is not financial; it is a poverty of spirit, effort and effectiveness on the mother's part.

■ Both parties have cited child custody cases. There are no differences in principles, merely differences in applying those principles to various factual settings. Under the facts here we must consider that these are critically formative years for the girls. Mother love is a major factor, but the degree of that love must be measured in the light of the demonstrated unwholesome home life the mother has provided. That home life stands in stark contrast to the affection, concern, care and environment offered by the father. He has carried his burden of showing changed circumstances, demonstrating that the girls' welfare requires their principal custody be transferred to him. We reach this conclusion on our own judgment, fortified by the decision of the trial court.

The order of modification is affirmed.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the order of modification is affirmed.

ANDERSON, P. J. RUDDY, J., and JAMES H. KEET, Jr., Special Judge, concur.